## Miethner v. Ulrich

*Egli, Reilly, Wolfson, Sheffey* and *Schrum,* for plaintiffs.

*Davis, Katz, Buggon, Davis* and *Reed,* for defendant.

*Walter F. Froh,* deputy attorney general, for the additional defendant Commonwealth of Pennsylvania, Department of Transportation.

GATES, *P.J.*, April 11, 1983—This matter comes before us on the original defendant's motion to compel the additional defendant to comply with discovery requests.

The relevant facts of this matter are as follows:

On March 22, 1980, Romaine Ulrich was proceeding south on Interstate 81 during the late afternoon hours. At approximately 5:30 p.m., as the Ulrich vehicle drove through a pass in the mountain commonly referred to as the "McAdoo Cut," it encountered a glazed area on the highway. Because Ulrich was unable to control the direction of her ve-

hicle and in attempting to avoid another vehicle that had skidded before them, the Ulrich vehicle collided with an automobile owned by plaintiffs.

On March 22, 1982, plaintiffs sued Romaine Ulrich in trespass. Subsequently, Romaine Ulrich joined the Pennsylvania Department of Transportation (Penn DOT) as an additional defendant alleging negligent and improper maintenance and/or design of the highway in this mountain pass.

Thereafter, defendant filed requests for production of documents and interrogatories on the additional defendant Penn DOT. In response to two of the requests for production of documents in the possession of the Pennsylvania State Police, the additional defendant answered by stating that it did not have possession or control of those documents. Additionally, Penn DOT replied that the documents requested are statutorily confidential and not subject to discovery.

In answer to the interrogatories, Penn DOT again objected on the basis of statutory privilege to interrogatories nos. 27 and 28. In response to interrogatories 35, 42 (a), 44, 46 and 47 Penn DOT replied that the information was unknown and solely within the knowledge of the Pennsylvania State Police.

Defendant Romaine Ulrich now seeks an order of this court to compel discovery based on these answers. The matter has been briefed by the parties and is now ripe for our disposition.

The narrow issue presented to us is whether the information requested by defendant and objected to by Penn DOT is privileged and consequently not subject to disclosure.

While our discovery rules are broad and are interpreted liberally by the courts, there are specific limitations upon the scope of discovery and inspection.

Specifically, Pa.R.C.P. Rule 4011(c), 42 Pa.C.S. expressly prohibits discovery which relates to matters which are privileged. Penn DOT's objections to these interrogatories are based on the provisions of Pennsylvania's Motor Vehicle Code, specifically Sections 3747, 3751 and 3754[1]. Our examination of these sections leads us to conclude that defendant Romaine Ulrich's motion must be denied.

The motivation of the legislature in adopting the Motor Vehicle Code and continually updating it is to promote highway safety. The tragedies on our highways are not unique to Pennsylvania. Recent efforts have been made to achieve some uniformity with the Uniform Motor Vehicle Code and Model Traffic Ordinance and to meet federal standards. To enhance the legislative objects, the Vehicle Code adopted in 1976 provides broader power of regulation to the Department of Transportation than had previously existed. We allow that considerable research and thought went into the wording of the Vehicle Code.

So, in undertaking our analysis of the Vehicle Code we must be mindful of the "Statutory Construction Act of 1972", 1 Pa.C.S. §1501, et seq. (Purdon), which directs that statutes ". . . shall be liberally construed to effect their objects and to promote justice." 1 Pa.C.S. §1928 (c) (Purdon).

We agree with the observations of Judge Adams in Mayfield v. Penn DOT, 23 D.&C.3d 79 (1982), in a case squarely in point, that:

"The object of the Pennsylvania Motor Vehicle Code is to effect a safe and efficient system of motor vehicle transportation in the Commonwealth. To that end it is necessary that the Department of Transportation have an unbiased, honest and accu-

---

1. 75 Pa.C.S. §3747, 3751 and 3754 (Purdon).

rate body of information regarding motor vehicle accidents. The confidentiality provisions at issue herein were enacted to avoid the chilling effect which the subsequent use of accident information compiled would have on full and frank disclosure."

Section 3753 of the Motor Vehicle Code requires Penn DOT to establish a central accident records agency responsible for tabulating and analyzing reportable traffic accidents as required by section 3746 of the code.

The section further requires Penn DOT to provide the general assembly with accident data for analysis in selecting accident prevention programs and in evaluating the effectiveness of these programs. The department must report anually to the general assembly the results of their statistical studies so that the legislature has a factual basis for enacting accident prevention programs.

By section 3754 of the code, Penn DOT, in association with the Pennsylvania State Police, is authorized to conduct in-depth accident investigations for the purpose of determining the cause of traffic accidents and factors which may help prevent similar types of accidents. The information, records and reports associated with these accident investigations are rendered specifically confidential and are not admissible as evidence in any legal action or other proceedings.

Subparagraph (b) of section 3754 specifically provides that no officer or employee of the agencies charged with the procurement or custody of in-depth accident investigations and reports may give evidence pertaining to anything contained in the in-depth accident investigations records in any legal action or other proceeding.

Under the provisions of section 3746 the driver of a vehicle involved in an accident resulting in injury

or death of any person or damage to any vehicle involved to the extent that it cannot be driven under its own power must report the accident to the nearest authorized police department. Every accident investigated by the police department, as required under this section of the code, must be investigated by a police officer.

Section 3747 requires the driver of the vehicle to file a written report of an accident to Penn DOT within five days of the accident if a police officer does not investigate the accident as required by section 3746. Section 3751 requires every police department to report to Penn DOT the results of accidents investigated by police officers.

Subsection 3747(e) specifically provides as follows:

"Confidentiality of reports. — All written reports required in this section to be forwarded to the Department by drivers or owners of vehicles involved in accidents shall be without prejudice to the individual so reporting and shall be for the confidential use of the Department and any other government agency or their representatives having use for the records for accident prevention purposes . . . "

Subparagraph (f) of section 3747 prohibits the use of these reports as evidence except under certain circumstances not applicable in this case.

We do not need a legislative history to decipher the legislative purpose in enacting this web of reporting procedures. The obvious purpose is to enable Penn DOT to perform its statutory functions of furthering highway safety and keeping the general assembly informed of accident statistics. The confidentiality provisions and the limited use of the data thus compiled is not to aid prospective plaintiffs in

the preparation of lawsuits[2]. If it were otherwise, there would be no need for the legislature to specifically provide for confidentiality and limit the use of the accident reports.

Defendant Romaine Ulrich contends that the discovery is directed toward the disclosure of evidence of prior similar accidents on Interstate 81 at or near the McAdoo Cut to support her claim that the joined defendant Penn DOT was negligent in improperly maintaining and/or designing the McAdoo Cut strip. Defendant vigorously argues that even if the information sought is inadmissible at trial it is relevant and that relevancy is the touchstone to the allowance of discovery. We allow that relevancy is the rule and not admissibility. However, Rule 4003.1 specifically excludes from the realm of discovery matters which are privileged. Therefore, we need not explore the relevancy of the information sought by discovery.

Furthermore, we must reject defendant's argument based on the Sovereign Immunity statute which specifically allows lawsuits against Penn DOT for defective maintenance and/or design of a highway. Our interpretation of the Motor Vehicle Code does not amount to a repeal of the Immunity Statute. A party seeking to impose liability on Penn DOT on a theory of defective design and/or maintenance can still sustain their claim based on expert testimony of engineers and other persons having expertise in the field of highway designs and maintenance.

Finally, we have examined Simmons v. Allegheny County, 23 D.&C.3d 360 (1980) and Lindsey v. Commonwealth of Pennsylvania, Department of

---

2. If the broad discovery here sought were allowed, Penn DOT would be overwhelmed with discovery requests.

Transportation, 23 D.&C.3d 202 (1982) cited by defendant as authority for requiring discovery. Frankly, we are unpersuaded by Simmons and Lindsey in that they fail to consider fully the objective of the legislature in enacting the various sections of the Motor Vehicle Code dealing with accident reporting and the concept of confidentiality. In our considered judgment defendant Romaine Ulrich's motion to compel discovery of the Pen DOT records which are statutorily privileged should be dismissed.

## ORDER OF COURT

And now, April 11, 1983, upon consideration of the motion of defendant Romaine Ulrich to compel discovery of the additional defendant the same is dismissed and the rule issued January 4, 1983 is discharged.